UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CIEARRA PULLIAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:09 CV 398-PPS |
| | ) |
| THE MANSARDS APARTMENTS and | ) |
| DIONNE SMITH, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Ciearra Pulliam is a member of the United States armed forces. In this case, which she is pursuing *pro se*, Pulliam claims that her landlord improperly evicted her while she was on active duty in the military in violation of the Servicemembers Civil Relief Act, 50 App. U.S.C. § 501 *et seq*. The defendants are the Mansards Apartments and property manager Dionne Smith,[1] who have filed a motion to dismiss Pulliam's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). Because Pulliam states a claim upon which relief may be granted, the motion is denied.

**BACKGROUND**

On or about August 1, 2009, Pulliam signed a lease with Mansards Apartments located in Griffith, Indiana. [DE 1 ¶6]. About October 23, 2009, Pulliam received orders to report to Fort McCoy in Wisconsin on October 26, 2009. [*Id.* at ¶ 7]. Pulliam's orders stated that she was to

---

[1] Defendants refer to themselves as Mansards Apartments Limited Partnership rather than The Mansards Apartments and DeAhn Smith rather than Dionne Smith.

1

stay at Fort McCoy until November 18, 2009. [*Id.*]. Pulliam asserts that she notified Mansards and faxed a copy of her orders to its office. [*Id.* at ¶ 8]. On or about October 28, 2009, Pulliam's friend, Nichole Moore notified Pulliam that a notice was posted on Pulliam's apartment door that mandated her to appear in court on November 4, 2009 for a show cause hearing. [*Id.* at ¶ 9]. Because Pulliam was away on active duty, she sought to appoint Moore to appear on her behalf, and Pulliam and Moore signed power of attorney forms dated October 28 and 29. [*Id.* at ¶ 10-11, Exh. D].

At the November 4 hearing in Hammond City Court, the attorney for Mansards and Moore signed a Pre-Judgment Order of Possession and Bond which Pulliam construes as establishing a payment plan for Pulliam to pay back-rent. [*Id.* at ¶ 12]. Pulliam was to pay $1,129.00 on November 9, 2009 and $1,028.00 on November 20, 2009. [*Id.* Exh. C]. Pulliam failed to pay her back-rent on that schedule, and on November 10, 2009 Mansards notified her that she had been evicted and her possessions had been placed outside the building. [*Id.* at ¶ 13]. Subsequently, Pulliam filed this lawsuit on December 1, 2009.

Count I alleges violations of the Servicemembers Civil Relief Act with regard to her eviction and the removal of her personal property. Count II alleges violations of Indiana law relating to the unlawful removal of tenants' personal property [IC 32-31-5-5] and abandonment of property [IC 32-31-4-2]. Defendants previously filed a motion to dismiss which was denied because the record failed to show that the motion had been served on Pulliam. [DE 10]. Defendants are back with a renewed motion to dismiss [DE 11], again asserting that Pulliam does not have a claim upon which relief can be granted with regard to Claim I and that the court lacks subject-matter jurisdiction as to Count II.

**DISCUSSION**

The Supreme Court has retooled its interpretation of the pleading standards in recent years, beginning with its opinion in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007). In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (quotation marks and brackets omitted). More recently, the Court readdressed the *Bell Atlantic* decision and stated: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Determining whether a complaint states a plausible claim for relief requires me to draw on my judicial experience and common sense. *Id*. at 1950. And although at this stage I must accept all allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported only by mere conclusory statements. *Id*. Additionally, *pro se* complaints "are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Gathered at 50 App. U.S.C. § 501 *et seq.* are various provisions and protections applicable to active service members, collectively known as the Servicemembers Civil Relief Act ("SCRA"). Section 531(a) of the SCRA addresses "Evictions and Distress" and states as follows:

(a) Court-ordered eviction

> (1) In general - **Except by court order**, a landlord (or another person with paramount title) may not–
>
>> (A) evict a servicemember, or the dependents of a servicemember, during a period of military service of the servicemember, from premises–
>>
>>> (i) that are occupied or intended to be occupied primarily as a residence; and
>>> (ii) for which the monthly rent does not exceed $2,400, as adjusted under paragraph (2) for years after 2003; or
>>
>> (B) subject such premises to a distress during the period of military service.

Essentially this provision states that landlords cannot effect a residential eviction of servicemember on active duty unless the landlord obtains a court order. Mansards and Smith argue that Count I should be dismissed because Mansards did obtain a court order authorizing eviction when Pulliam asked a friend "to appear on [her] behalf" during the hearing held on November 4, 2009. [DE-1 ¶10]. Defendants assert that the file-stamped Pre-Judgment Order of Possession and Bond (submitted by Pulliam as Exhibit C to her complaint) was mutually executed by the parties, and that when Pulliam failed to timely make the payments of "bond" necessary to obtain a stay of the possession order in Mansards' favor, Mansards was entitled to evict Pulliam. Mansards reasons that this Order authorized Pulliam's eviction if she failed to make timely payments. So, the argument goes, Mansards' conduct when she failed to make the payments was pursuant to a court order and did not violate the SCRA.

Pulliam offers two contentions in opposition.[2] First, she points out that the Order submitted as her Exhibit C is not signed by a judge of the Hammond City Court which purportedly issued it. Mansards' response to that contention is the submission of its own Exhibit A, a file-stamped copy of the Order bearing the signature of a "Judge/Referee" of the Hammond City Court. [DE 16-1]. But documents not attached to the complaint may not be considered on a motion to dismiss; the proper procedure would be to convert the motion to one for summary judgment under Rule 56. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

In any event, even if I were to consider the documents Mansards attaches to its motion, Pulliam's second argument in opposition to the dismissal gives me enough pause to allow discovery to be taken. Pulliam alleges that the power of attorney that she gave to Moore is ineffective. In particular, Pulliam is challenging the validity of Nichole Moore's signature on the agreed Pre-Judgment Order of Possession and Bond as Pulliam's agent. In the reply in support of their motion to dismiss, Mansards and Smith fail to address this argument.

As Exhibit D to her complaint, Pulliam submitted two power of attorney forms, noting on their cover sheet "none notorized (sic) poa that Lawyer accepted. poa was the wrong type." The first of the two forms is an Illinois Department of Revenue form (IL-2848 Power of Attorney) completed so as to designate Moore as Pulliam's attorney-in-fact and signed by both of them. [DE1-2, pp.16-17]. On its face, however, this document appears to be limited to use by a taxpayer to appoint someone to represent him before the Illinois Department of Revenue. *Id*. The second form making up Pulliam's Exhibit D is an Internal Revenue Service Form 2848,

---

[2] Pulliam is warned that she must sign all future filings in this case, as required by Fed.R.Civ.P. 11(a): "Every pleading, written motion, and other paper must be signed...by a party personally if the party is unrepresented."

5

Power of Attorney and Declaration of Representative. [DE 1-2, pp. 18-19]. Although it shows signatures for both Pulliam and Moore, this form is not completely filled out (the first page is entirely blank) and it lacks the notary seal apparently required where the grantee is not an attorney, certified public accountant or enrolled agent. *Id.* Furthermore, the IRS form contains an express limitation: "**Caution:** Form 2848 will not be honored for any purpose other than representation before the IRS." *Id.*

During the November 4 hearing in the Hammond City Court, all participants appear to have agreed to allow Moore to act as attorney-in-fact for Pulliam. But the legal basis for doing so appears to be in question. Exhibits to the complaint and Pulliam's opposition to the motion to dismiss refer to the power of attorney being of the wrong type or being limited to taxpayer purposes, and as lacking a necessary signature or notarization. These are reasons to question the legal effectiveness of the two power of attorney forms for the purpose of Moore's representation of Pulliam at the November 4 hearing, and I will construe Pulliam's *pro se* filings to assert such a challenge.[3] Because Mansards and Smith have not addressed that issue, the effect of Moore's signature on the Pre-Judgment Order of Possession and Bond is in doubt, and I am not persuaded that the motion to dismiss Count I can be granted.

As to Count II, defendants assert that if Pulliam's first count is dismissed, then Count II, containing allegations of state law violations, should also be dismissed for lack of subject-matter

---

[3] This sort of challenge is also reflected in the police report submitted as Exhibit E to Pulliam's complaint. [DE 1-2, pp. 20-23]. The Griffith Police Department was apparently called to the Mansards property manager's office on November 10, 2009 on a disturbance call when Moore confronted defendant Smith concerning Pulliam's eviction. The police officer's narrative account of what transpired includes a description of Moore's position (and possibly Pulliam's, with whom the officer spoke by phone) that the Agreed Order was no good because the Power of Attorney was not properly signed or notarized by the Army's Judge Advocate General's office. *Id. at 22.*

jurisdiction. Obviously this argument is a non-starter if Count I is not dismissed. I note generally, however, that Mansards and Smith fail to acknowledge the full potential for the exercise of supplemental jurisdiction over the state law claims asserted in Count II. Pulliam's Counts I and II arise from the same nucleus of common fact, namely her eviction and the disposal of her personal property. The court has original jurisdiction over Count I because it pertains to violations of a federal statute, the SCRA. Defendants fail to explain why supplemental jurisdiction pursuant to 28 U.S.C. §1367 would not apply generally to Count II, including at least the discretionary possibility of retaining jurisdiction over Count II pursuant to §1367(c)(3) even if Count I were dismissed.

Finally, although Mansards' argument for dismissal of Count II is off-kilter, I note that Pulliam's response to it is equally off-base. In her opposition to the motion to dismiss Count II, Pulliam argues in essence that where the state causes a federal violation, it cannot try to prohibit litigants from seeking redress in federal court for that violation. This is not a circumstance where that legal principle could have any application. The Mansards Apartments and Ms. Smith are not state actors, but a private entity and a private individual. In any event, Mansards and Smith are unsuccessful in their bid to have Count II dismissed.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendants Mansards Apartments and Dionne Smith [DE 11] is **DENIED**.

**SO ORDERED.**

ENTERED: June  21 , 2010

                                                 /s/ Philip P. Simon
                                               Philip P. Simon, Chief Judge
                                               United States District Court