UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CIEARRA PULLIAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:09-CV-398-PPS |
| | ) |
| THE MANSARDS APARTMENTS and | ) |
| DIONNE SMITH, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff Ciearra Pulliam filed this suit *pro se* on December 1, 2009, alleging that her eviction violated the federal Servicemembers Civil Relief Act and other state laws. Now before the Court is the unopposed Motion for Summary Judgment filed by Defendants Mansards Apartments and property manager Dionne Smith (collectively "Mansards" hereafter). Mansards asserts that Pulliam's failure to respond to its Requests for Admission and Request to Admit Genuineness of Documents establishes that there is no genuine issue of material fact and that Mansards is entitled to judgment as a matter of law because the eviction was pursuant to court order, so that it was permissible under the Act. Pulliam has filed no response to the summary judgment motion.

**UNDISPUTED FACTS**

Rule 36 of the Federal Rules of Civil Procedure allows for requests to admit the truth of "facts, the application of law to fact, or opinions about either." Fed.R.Civ.P. 36(a)(1)(A). By failing to respond to Mansards' requests for admission, Pulliam is deemed to have admitted the following matters. [DE 34-3 and DE 34-4].

On August 1, 2009, Pulliam signed a lease to rent an apartment at the Mansards Apartments. Pulliam failed to pay any rent for the months of October and November of 2009. After the failure to pay the rent due for October, Pulliam received a notice which required her to appear in court on November 4, 2009 for non-payment of rent. Prior to that court date, Pulliam requested her friend Nicole Moore to serve as her legal representative and to appear in court on her behalf on November 4, 2009. Pulliam and Moore executed a Power of Attorney on October 29, 2009 naming Moore as Pulliam's attorney-in-fact.

Moore appeared in court as Pulliam's legal representative on November 4, 2009, and there signed an Agreed Order in the name of Ciearra Pulliam as her legal representative. The Agreed Order signed by a state court judge specifically provided that Pulliam could obtain a stay of eviction if she paid $1,129 by November 9, 2009 and $1,028 by November 20, 2009, but otherwise authorized the Sheriff of Lake County to "seize the possession of the property described herein and remove Defendants and all occupants of the herein described premises, and the personal property therefrom." [DE 34-4, p.7]. Pulliam failed to pay the amounts of $1,129 and $1, 028 by the dates set in the Agreed Order and was thereafter evicted from her apartment.

**DISCUSSION**

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2). If no reasonable jury could find for the nonmoving party, there is not a genuine issue of material fact. *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010), citing *Brewer v. Bd of Trustees of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). "Disputed facts that are not outcome-determinative are not material and will not preclude summary judgment." *Montgomery*

*v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). On summary judgment, facts and inferences are construed in favor of the non-moving party. *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 376 (7th Cir. 2010).

**A. Genuine Issues of Material Fact**

Material facts that the parties have previously disputed were conclusively admitted when Pulliam failed to respond to Mansards' two Requests for Admission and, to this day, has not requested that these admissions be set aside. Fed.R.Civ.P. 36(b). Pulliam's failure to respond to the motion for summary judgment represents yet another failure to dispute the facts Mansards relies upon. The primary matters in dispute were the legal capacity of Nicole Moore to act as Pulliam's legal representative and the validity of the Agreed Order that led to Pulliam's eviction.

On the subject of Moore's agency, I have previously noted in my Order of June 21, 2010, that the Power of Attorney specifically applied only to representation before the IRS. Additionally, the form requires notarization when the grantee is not an attorney, certified public accountant, or enrolled agent. Therefore even though Pulliam's failure to respond to Mansards' Request admits the genuineness of the document, the document's express limitations do not necessarily allow it to be used to grant power of attorney authority for eviction hearings.[1] But Mansards' other Request for Admissions adequately addresses the facts necessary to conclude that Moore had the capacity to act as Pulliam's agent under general principles of agency.

---

[1] Even its ability to effectively grant power of attorney for IRS proceedings is doubtful as it is not notarized and Moore is neither an attorney, certified public accountant, or enrolled agent.

Actual authority "'can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'" *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 (7th Cir. 1998), quoting Restatement (Second) of Agency, § 26. Here Pulliam has admitted that she "requested Nicole Moore to serve as her legal representative and to appear in court on her behalf on November 4, 2009." [DE 34-3, ¶4]. Furthermore, actual authority may be either express or implied, and implied authority may be shown through circumstantial evidence. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). Pulliam has admitted that she "signed a power of attorney on October 29, 2009 which purported to name Nicole Olivia Moore as her attorney." [DE 34-3, ¶5].

Implied authority covers actions that are reasonably necessary for the agent to perform in order to carry out her express authority. *Opp*, 231 F.3d at 1064. It was reasonable for Moore to interpret this to mean that she was authorized to act on Pulliam's account at the hearing through express actual authority. *Id.*; *Moriarty*, 155 F.3d at 866. Pulliam also had the JAG office prepare a Power of Attorney for Moore [DE 1-2 at 22], further indicating her intent to allow Moore's actions at the hearing to bind her. Even though the form on its face only applied to tax matters, there is no indication in the record that Pulliam and Moore had any pending tax matter that this form was required for. Rather, it appears to be a form that the JAG office had readily available, and which Pulliam and Moore used to demonstrate Pulliam's intent to have Moore act as her agent at the November 4th hearing.

Next, the record shows that at the hearing itself, Moore told opposing counsel that she was appearing on Pulliam's behalf and presented the Power of Attorney form to that effect [DE

4

1-2 at 22; DE 25 at 9]. At the hearing, the court and the parties decided to implement an Agreed Order, allowing Mansards to evict Pulliam if she failed to make her delinquent payments starting on November 9. Signing this Agreed Order was reasonably necessary for Moore to carry out her duties to act on Pulliam's behalf at the hearing. It would have been very difficult to resolve the eviction issue at this hearing if Moore was not able to enter into any agreements on Pulliam's behalf. Accordingly, Moore had the implied authority to sign the Agreed Order. *See Opp*, 231 F.3d at 1064. On the basis of the admissions before me, I conclude as a matter of law that Moore acted with authority as Pulliam's agent when she signed the Agreed Order.

The validity and the impact of the Agreed Order requires some analysis. The Agreed Order appears in the record in multiple places, several times without the judge's signature. Many of these are the order's multiple appearances as an exhibit to Pulliam's complaint. *See* DE 1-2, pp. 13-14; DE 9-2, pp. 17-18; DE 11-1; pp. 17-18. Two copies of the Agreed Order are submitted with the summary judgment motion. One is the copy that was attached to Pulliam's complaint, and one is the copy submitted to Pulliam with Mansards' Request for Admission of Genuineness of Documents. [DE 34-1, pp. 17-18; DE 34-4, pp.7-8]. Neither copy bears the signature of a judge. Needless to say, the parties' agreement without the judge's imprimatur would not constitute an order of court.

Furthermore, because Pulliam was not asked to admit the genuineness of the Agreed Order bearing a judge's signature, her failure to respond to a Request for Admission pertaining to the documents does not concede that the proposed order was ever issued by a court. But I am satisfied that the ultimate issuance of the Agreed Order by the Hammond City Court is not genuinely in dispute. The separate Request for Admission contains repeated references to the

5

order, its provisions and, impliedly, its effectiveness as an order of the court. Ultimately, Pulliam has admitted that "[t]he eviction of Ciearra Pulliam from the Mansard Apartments was done pursuant to the court order" and that "[s]ince the eviction of Ciearra Pulliam was done pursuant to the court order...the eviction did not violate the terms of the Servicemembers Civil Relief Act." [DE 34-3, ¶11 & ¶12]. These admissions, along with her failure to respond to the motion for summary judgment, are sufficient to establish that Pulliam does not now dispute that the Agreed Order signed by Moore was ultimately issued by the court.

In addition, I note that the record of the case does contain a copy of the order showing the signature of a "Judge/Referee." [DE 16-1, pp. 1-2]. This copy was submitted with Mansards' reply in support of an earlier motion to dismiss, after Pulliam's opposition to the motion pointed out that the copy of the order Mansards submitted with its motion (which was the exhibit from Pulliam's complaint) was not signed. [DE 15, p.1.] In my order denying the motion to dismiss, I pointed out that documents not attached to the complaint could not be properly considered at that procedural juncture. [DE 17, p.5]. But now, at the summary judgment stage of the case, I can rely of that document which is part of the record and which shows, consistent with all of the other evidence in the case, that a judge did indeed sign the agreed order.

### B. Judgment as a Matter of Law

Although the facts are no longer in dispute, I must still determine if Mansards is entitled to judgment as a matter of law on the undisputed facts. Count I of Pulliam's complaint is based on the Servicemembers Civil Relief Act, 50 App. U.S.C. §501 *et seq.* Section 531 of the Act governs "Evictions and distress," providing as follows:

(a) Court-ordered eviction

6

> (1) In general
>
> **Except by court order**, a landlord...may not–
>
>> (A) evict a servicemember, or the dependents of a servicemember, during a period of military service of the servicemember, from premises–
>>
>>> (i) that are occupied or intended to be occupied primarily as a residence; and
>>>
>>> (ii) for which the monthly rent does not exceed $2,400....; or
>>
>> (B) subject such premises to a distress during the period of military service.

50 App. U.S.C. §531(a) (emphasis added). The plain language of the exception built into the statute covers the undisputed factual scenario here. Since the eviction was carried out pursuant to a court order, I conclude as a matter of law that it did not violate the Servicemembers Civil Relief Act. Therefore, Mansards is entitled to summary judgment on Pulliam's Servicemembers Civil Relief Act claim because Moore acted as Pulliam's agent with authority to sign the Agreed Order, which operated as a court order allowing eviction once Pulliam failed to pay the required amounts.

Mansards further argues that if I grant summary judgment on the SCRA claim in Count I, that I should dismiss Pulliam's state law claims in Count II. Pulliam has not responded to the motion and so does not offer any opposition to the argument. Under 28 U.S.C. § 1367, a federal court has supplemental jurisdiction over claims that form part of the "same case or controversy" as claims over which it has original jurisdiction. 28 U.S.C. § 1367(a). Even if the court dismisses "all claims over which it has original jurisdiction," the court may, but is not required to, exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010). The court has discretion over whether or not to exercise supplemental

jurisdiction. *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 589 F.3d 881, 883 (7th Cir. 2009).

However, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Miller*, 600 F.3d at 738. This preference applies unless the statute of limitations has run on the state law claims, substantial judicial resources have already been used, or it is clear how the state law issue should be decided. *Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514-515 (7th Cir. 2009). Courts do not abuse their discretion in declining supplemental jurisdiction when the statute of limitations has not run, federal claims are dismissed through summary judgment, and it is unclear how the state issue should be resolved. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008).

This is precisely the situation that we have before us in this case. Pulliam's state law claims will be tolled during the time she serves in the military, pursuant to the Servicemembers Civil Relief Act. 50 App. U.S.C. § 526(a). Accordingly, she will still have time to file these claims in state court. Also, the Court has not spent substantial judicial resources on this case since the federal claim has been resolved through summary judgment. It will not create a duplication of effort for a state court to now hear Pulliam's state law claims. Finally, it is not clear how the state issues will be resolved. Pulliam's state law claims involve issues of property law between landlords and tenants with which the federal courts do not typically deal, and these claims would be better decided by a state court. I will decline to exercise supplemental jurisdiction over Pulliam's state law claims.

**CONCLUSION**

For the foregoing reasons, Mansards' Motion for Summary Judgment [DE 34] is **GRANTED.**

The **Clerk shall ENTER JUDGMENT** in the case **granting summary judgment in defendants' favor on Pulliam's federal claim** under the Servicemembers Civil Relief Act, **and dismissing Pulliam's state law claims without prejudice** because the Court declines to exercise supplemental jurisdiction over them.

SO ORDERED.

Entered this 6th day of May, 2011.

                                                  /s/ Philip P. Simon
                                                  Chief Judge
                                                  United States District Court